UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| GARY RAMBO and ZACHARY CROUSE, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 4:20-cv-04212-SLD-JEH |
| GLOBAL DIVERSIFIED, INC., AMY MILLER, and JASON MILLER, | ) |
| Defendants. | ) |

ORDER

Before the Court is the parties' Joint Motion for Court Approval of Settlement Agreement and for Order of Dismissal with Prejudice, ECF No. 8. For the reasons that follow, the motion is GRANTED.

BACKGROUND

Plaintiffs Gary Rambo and Zachary Crouse were employees of Defendant Global Diversified, Inc. ("Global"). *See* Compl. ¶¶ 5, 15, 16, ECF No. 1. Global "specializes in cellular tower construction and maintenance, commercial and residential land development and property management throughout the State of Illinois and the State of Michigan." *Id.* ¶ 11. Defendants Jason Miller and Amy Miller founded Global. *Id.* ¶ 12. At all times material to this suit, Jason served as Global's chief operating officer and Amy as its president. *Id.* ¶¶ 5–6. Rambo worked for Global as a power hand and welder from February 3, 2020 through August 30, 2020. *Id.* ¶ 15. Crouse worked for Global as a power hand and welder from July 3, 2020 through September 4, 2020. *Id.* ¶ 16. Plaintiffs allege that Defendants paid Crouse in cash and did not remove taxes or withholding from his wages. *Id.* ¶ 21. Plaintiffs also allege that they worked an average of seventy to eighty hours a week, *id.* ¶ 18, but that Defendants "failed to compensate

1

[them] at or above the applicable federal overtime wage in one . . . or more workweeks," *id.* ¶ 22. They further allege that Defendants' time keeping system limited the number of overtime hours that Rambo was able to record but that Defendants required him to work additional hours and refused to pay him "for all accrued overtime compensation." *Id.* ¶ 23. And they allege that Defendants did not keep time records for Crouse and refused to pay him "for all of his accrued overtime compensation throughout his employment period." *Id.* ¶ 24.

Plaintiffs filed suit against Defendants, alleging that they violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19. They seek unpaid overtime wages, liquidated damages, and attorneys' fees. Compl. 7–8. Defendants deny liability. *See* Joint Mot. Ct. Approval 1–2. The parties have settled, and they now ask the Court to approve their settlement agreement and dismiss the case.

## DISCUSSION

### I.   Legal Standard

Stipulated settlements of claims brought under the FLSA must be approved by a court.[1] *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).[2] "To determine the fairness of a settlement under the FLSA, the court must consider whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 994–95 (N.D. Ind. 2010) (quotation marks and brackets omitted). Courts generally

---

[1] FLSA claims may also be settled under the direct supervision of the Secretary of Labor. 29 U.S.C. § 216(c).
[2] The Seventh Circuit has not addressed this issue, but district courts in this Circuit routinely require approval. *See, e.g.*, *Salcedo v. D'Arcy Buick GMC, Inc.*, 227 F. Supp. 3d 960, 961 & n.1 (N.D. Ill. 2016); *Paredes v. Monsanto Co.*, No. 4:15-CV-088 JD, 2016 WL 1555649, at *1 (N.D. Ind. Apr. 18, 2016); *Ellison v. Nisource, Inc.*, No. 2:15-CV-59-TLS, 2016 WL 782857, at *1–2 (N.D. Ind. Feb. 29, 2016). *But see Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255–56 (5th Cir. 2012) (finding a private settlement of an FLSA suit enforceable where there was a bona fide dispute between the parties over the hours worked despite the fact that no court previously approved the settlement).

approve settlements that are the product of "contentious arm's-length negotiations, which were undertaken in good faith by counsel and where serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Ellison v. Nisource, Inc.*, No. 2:15-CV-59-TLS, 2016 WL 782857, at *1 (N.D. Ind. Feb. 29, 2016) (quotation marks omitted). Relevant factors include:

> (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceeding and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of the defendants to withstand a larger judgment; (6) the range of reasonableness of the settlement fund in light of the best possible recovery; and (7) the range of reasonableness of the settlement fund in light of all the risks of litigation.

*Paredes v. Monsanto Co.*, No. 4:15-CV-088 JD, 2016 WL 1555649, at *2 (N.D. Ind. Apr. 18, 2016).

## II.   Analysis

The parties' settlement agreement requires Plaintiffs to dismiss their lawsuit with prejudice and release Defendants from any claims arising out of Plaintiffs' employment with Defendants and any claims which concern any acts or omissions occurring prior to or on the effective date of the agreement. Settlement Agreement and Release ¶ 4, Joint Mot. Ct. Approval Ex. A, ECF No. 8-1. The agreement also bars Plaintiffs from seeking or accepting employment with Defendants in the future, *id.* ¶ 5, contains a confidentiality provision, *id.* ¶ 6, and bars Plaintiffs from disparaging or denigrating Defendants and, in return, bars Amy and Jason from disparaging or denigrating Plaintiffs, *id.* ¶ 7. The agreement requires Defendants to pay Rambo $2,000 ($1,000 in alleged wages owed and $1,000 in alleged liquidated damages); Crouse $2,750 ($1,375 in alleged wages owed and $1,375 in alleged liquidated damages); and Plaintiffs' attorneys $5,000. *Id.* ¶ 3.

3

The Court finds that this settlement agreement is the product of arm's-length negotiations. Both sides are represented by counsel, and there are bona fide disputes over the law and facts in this case. *See* Joint Mot. Ct. Approval 1–2, 4. For example, the parties dispute the accuracy of Defendants' record keeping practices and whether Defendants properly compensated Plaintiffs for all hours worked. *Id.* at 2. The reasonableness of the settlement fund counsels in favor of approving the settlement. The parties represent that the amounts allocated for Plaintiffs "constitute[] . . . full recovery of the total amount of liquidated and unliquidated damages that [they] could have received arising from the alleged overtime hours worked during [their] employment with Defendants." *Id.* at 4. It appears Plaintiffs could not receive further relief on their overtime claims other than a court finding Defendants' practices violated the FLSA and additional attorneys' fees. Moreover, this case is in its early stages; Defendants have not filed their answer yet. It is evident that "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation," *Ellison*, 2016 WL 782857, at *1 (quotation marks omitted); *see also Paredes*, 2016 WL 1555649, at *2 ("By resolving their claims against Monsanto at this early stage, the plaintiffs are able to avoid [the time and expense of further litigation] . . . .").

The Court also finds the amount designated for Plaintiffs' attorneys reasonable. *See Donaldson v. MBR Cent. Ill. Pizza, LLC*, No. 18-cv-3048, 2019 WL 4447969, at *2 (C.D. Ill. Sept. 17, 2019) ("[T]he Court's determination of whether the proposed settlement is both fair and reasonable also includes an evaluation of the reasonableness of the attorneys' fees sought."). While Plaintiffs receive only $4,750 under the settlement agreement and their attorneys receive $5,000, this does not necessarily make the agreement unreasonable or unfair. There is no rule requiring that attorneys' fees be proportional to the plaintiff's recovery in cases brought under

statutes with fee-shifting provisions like the FLSA, 29 U.S.C. § 216(b). *See Dominguez v. Quigley's Irish Pub, Inc.*, 897 F. Supp. 2d 674, 686 (N.D. Ill. 2012) ("Congress has affirmed its desire to have even small violations of the FLSA litigated, and many of those violations by their very nature are small. Litigation is expensive, and 'it is no surprise that the cost to pursue the contested claim will often exceed the amount in controversy.'" (quoting *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009))); *Paredes*, 2016 WL 1555649, at *2 (applying that principle when determining whether to approve an FLSA settlement).

Here, the parties represent that they negotiated attorneys' fees separately from settlement of Plaintiffs' claims, Joint Mot. Ct. Approval 2, which comports with their representation that Plaintiffs will receive the total amount of liquidated and unliquidated damages they could receive for their alleged unpaid overtime, *id.* at 4. Moreover, Plaintiffs' attorneys have submitted declarations explaining their backgrounds and the hourly rates they charge and time sheets demonstrating the time they spent on this case. *See* Richards Decl., Joint Mot. Ct. Approval Ex. B, ECF No. 8-2; Blumstein Decl., Joint Mot. Ct. Approval Ex. C, ECF No. 8-3. Attorney Richards claims an hourly rate of $375 for 6.55 hours of work. *See* Joint Mot. Ct. Approval 5, 8; Richards Decl. ¶ 15.[3] Attorney Blumstein claims an hourly rate of $225 for 10.94 hours of work. Joint Mot. Ct. Approval 7–8; Blumstein Decl. ¶¶ 10, 12. These rates are reasonable and do not exceed market rate in the Central District of Illinois. *See Jackson v. City of Peoria*, No. 17-1129, 2019 WL 5103806, at *6–8 (C.D. Ill. Oct. 11, 2019) (finding that $425 per hour was the

---

[3] Both in the joint motion and his declaration, Attorney Richards claims two hourly rates: $350 and $375. *Compare* Joint Mot. Ct. Approval 5 ($375), *and* Richards Decl. ¶ 15 ($375), *with* Joint Mot. Ct. Approval 6 ($350), *and* Richards Decl. ¶ 8 ($350). Moreover, Richards' declaration contains two different accounts of the time he spent on this case. *Compare* Richards Decl. ¶ 12 (5.88 hours), *with id.* ¶ 14 (6.55 hours). The Court uses 6.55 hours because the time sheet attached to Richards' declaration indicates he spent 6.55 hours working on this case, *see* Richards Time Sheet, Richards Decl. Attach. 1, ECF No. 8-2 at 6–7, and that is the amount of time claimed in the motion, Joint Mot. Ct. Approval 8. The Court uses $375 as the hourly rate because both $375 and $350 are reasonable rates and, because the parties settled for an amount less than the total amount of fees that would be warranted based on either hourly rate, the choice is not dispositive.

prevailing market rate and therefore was a reasonable hourly rate); *Donaldson*, 2019 WL 4447969, at *3 (noting in a case involving an FLSA settlement that the plaintiffs' attorneys' rates, which were between $250 and $400 per hour, "[we]re in line with rates that have recently been approved in this District"). Plaintiffs' attorneys also incurred $540 in costs ($400 for a filing fee and $140 for a process server, Richards Decl. ¶ 15), so the total amount of attorneys' fees and costs Plaintiffs incurred is $5,457.75.[4] The parties have agreed to settle for less than that amount in attorneys' fees. Joint Mot. Ct. Approval 8–9.

The Court is persuaded that the amount allocated for Plaintiffs' attorneys in the settlement agreement is reasonable despite the fact that Plaintiffs' attorneys will receive more money than Plaintiffs because Plaintiffs' total possible recovery was fairly low, the parties negotiated settlement of attorneys' fees separately from settlement of Plaintiffs' overtime wage claims, and Plaintiffs' attorneys charged reasonable rates and the attorney with the lower hourly rate spent more time on the case. *Cf. Donaldson*, 2019 WL 4447969, at *3 (approving an FLSA settlement where the plaintiffs collectively received a little more than $4,000 and their attorneys received $10,000 because the fees the attorneys received represented an approximately forty percent discount from the amount they could have obtained based on the time they spent on the case and their typical hourly rates, because employees charging lower rates performed basic tasks, and because each individual plaintiff's claim for damages was small); *Bligh v. Constr. Res. of Ind., Inc.*, 1:15-cv-00234-JD-SLC, 2016 WL 5724893, at *3 (N.D. Ind. Aug. 10, 2016) (approving a settlement agreement in an FLSA suit under which counsel would receive $1,500 of the total $2,500 recovery because, based on the circumstances in the case—the plaintiffs

---

[4] The joint motion states that the total amount of attorneys' fees and costs is $5,441, Joint Mot. Ct. Approval 8, but that is erroneous. The error stems from the parties' calculation of Attorney Richards' total fees. Whether using $350 or $375 as the hourly rate, the total amount of fees for 6.55 hours of work would not be $2,439.50. *See id.*

received a small settlement amount in exchange for resolving a counterclaim against one of them and the amount the attorneys would receive from that small settlement was "modest in light of the time and expense" counsel spent on the case—"the distribution of the settlement between [the p]laintiffs and their counsel . . . [was not] cause for concern"); *Paredes*, 2016 WL 1555649, at *2 (approving a settlement agreement under which the plaintiffs' attorneys would receive $6,000 and the plaintiffs would receive only $3,500 in part because "since the plaintiffs stand to gain relatively little on the FLSA liquidated damages claims to begin with, it is not surprising that the attorneys' fees would exceed those recoveries").

Finding that this settlement constitutes an arm's-length negotiation between represented parties where genuine legal and factual disputes are present and finding that the amount allocated for attorneys' fees is reasonable, the Court approves the parties' settlement agreement.

## CONCLUSION

Accordingly, the Joint Motion for Court Approval of Settlement Agreement and for Order of Dismissal with Prejudice, ECF No. 8, is GRANTED.  The Court APPROVES the parties' settlement agreement and orders that this case be DISMISSED WITH PREJUDICE pursuant to Federal Rule of Civil Procedure 41(a)(2).[5]  The Clerk is directed to enter judgment and close the case.

Entered this 26th day of January, 2021.

                                                                                                      s/ Sara Darrow
                                                                                                       SARA DARROW
                                                                          CHIEF UNITED STATES DISTRICT JUDGE

---

[5] Though the parties do not identify under which procedural vehicle they seek dismissal, the Court presumes it is Federal Rule of Civil Procedure 41(a)(2), which provides for voluntary dismissal by court order.